## SANDS *v.* SHOEMAKER. •

September, 1865.

Under the act (*L.* 1854, p. 773, c. 369, § 3, amending *L.* 1853, § 13),—providing that the directors of mutual insurance companies, making assessments, are to publish the same in such manner as they shall see fit, or as the by-laws shall have prescribed,—the publication, in the absence of by-laws, is to be made according to the discretion of the directors ; but where by-laws prescribe the mode of publication, their directions must be followed, and a defect therein is not aided by proof of a personal demand.*

The rule that a defendant relying on a defect of proof as a ground for a nonsuit, must make a distinct objection on the particular point,—applied to the case of an action on a premium note, without specific proof that the losses were such as the note could be assessed for.

The report of a referee in a general creditor's action, to which the receiver and the company were parties, in which an account of all the debts and assets of the company was taken, showing that the assets were insufficient to pay the debts and expenses of collection,—is sufficient evidence to sustain an assessment, as against the maker of a premium note.†

Willliam G. Sands, as receiver of the Ætna Insurance Company, sued Smith Shoemaker in the supreme court, on a premium note for three hundred and twenty-five dollars, which defendant had given to that company on an insurance of one thousand dollars for three years.

He also sued Charles St. John and Nelson Birdsall on a premium note for four hundred and twenty dollars, given to the company on their organization, and payable in such portions, &c., as the directors might require. In the latter action the same note was also alleged, as a separate cause of action, as having been given for premiums on insurance.

Subsequent to the giving of these notes, one Eames was appointed receiver of the company, on its becoming insolvent, and he, by order of the court, made an assessment upon the notes, to cover losses which accrued in the hazardous department of the company's business.

---

* This overrules in effect Cooper *v.* Shaver. 41 *Barb.* 151.

The word " publish," in the statute, does not require newspaper publication. Jackson *v.* Roberts, 31 *N. Y.* 304, 313.

† S. P. Jackson *v.* Roberts, 31 *N. Y.* 304 ; Sands *v.* Hill, 42 *Barb.* 651.

In the case of Shoemaker, the plaintiff was nonsuited on the ground that the assessments were invalid. In the case of St. John, plaintiff had judgment. The unsuccessful parties in both cases appealed.

*Henry R. Mygatt*, for the plaintiff in each case.

*Ward Hunt*, for the defendants.

DAVIS, J. [Delivered the following opinion in the case of Sands *v.* Shoemaker.]—In Sands *v.* Sanders, 26 *N. Y.* 239, the question of the validity of the assessments made by the receivers of the Ætna Insurance Company of Utica, was presented to, and passed upon, by this court. Upon the question whether an action could be sustained on the basis of the assessment made by receiver Eames, the court were equally divided; four of the judges being of opinion that the want of publication of notice of such assessment, in three newspapers of Oneida County, pursuant to the by-laws of the company, was fatal to a recovery. Upon this point, I concur in the views of EMOTT, J., 26 *N. Y.*, 247, 249, 250, to the effect that publication in the form prescribed by the by-laws was requisite, and that the defect in the publication was not aided by proof of a personal demand of payment of the note. The reasons assigned by him for these views are satisfactory to my mind, and will gain no strength by repetition.

But the court were united in the opinion that the assessment made by receiver Sands was, upon the facts found in that case, a valid one, and entitled the receiver to maintain his action; and for that reason the judgment was reversed and a new trial ordered. That decision is conclusive of this case, unless the facts are so essentially different that it is not applicable.

The chief differences claimed to exist are: First, that defendant's note and policy are not proved by competent evidence to be in the hazardous department; and, second, that there is no evidence that losses accrued during the existence of his policy, sufficient to require an assessment to the full amount of his note. In Sands *v.* Sanders it was found by the referee, as a fact in the case, that the note sued upon was

in that department. Such a finding is, of course, wanting in this case, for the reason that the court nonsuited the plaintiff upon his evidence, and no facts are found. It is manifest that the fact was one easily susceptible of proof, and a reference to the grounds on which the motion for nonsuit was based shows that it was assumed by all parties to be true. This is an abundant answer to the objection in the present stage of the case. If the defendant had designed to rely on the absence of proof that his note was in the hazardous department, he should have made a distinct point on that ground, and thus have enabled the plaintiff, with permission of the court, to have supplied the defect. Not having done so, but, on the contrary, having based some of the grounds of his motion on the assumption that his note was in that department, he is too late to make any question on that subject now.

As to the second alleged difference, it seems to me that competent proof was given to establish that claims for losses existed against the company, and had been established as against the receiver, sufficient to absorb the entire assets in the hands of plaintiff. Proof was given that, in an action pending in the supreme court,* wherein Hubbard & Terry were plaintiffs, and Eames, as receiver, and the company, were defendants, an order had been made by the supreme court referring it to Joseph Benedict, Esq., in substance, to take, state and report to the court, with the proofs therein, an account of all the funds, property and effects of the company, and to take proof of and report the amount of debts due and owing by said company, or which are charges upon the assets of said company, with a statement of the consideration and cause of such debt, when contracted, and to whom payable; which order directed and provided that due notice, by publication, should be given by the referee to the creditors of said company, to come in and prove their demands before him, at a time and place to be appointed, and that all creditors coming in and establishing these claims should be deemed parties to the action, and entitled to be heard upon all questions upon which he may be interested, in the same manner as if a party to the record, and brought into court upon process.

---

* Some proceedings in this case are reported in 22 *Barb.* 597.

The referee's report, under this order, was produced and read without objection, from which it appeared, in substance, that the claims and losses against the company established before him, were about one hundred and thirty-seven thousand dollars, and other claims seem to have been established to the amount of about seven thousand dollars.

In my opinion, the proceedings in the action of Hubbard & Terry *v.* Eames, sufficiently established the validity of the claims as against the company and the receiver, and it was not incumbent on. the latter to go into evidence to show, in this action, that those claims were well founded. The aggregate of all the assets of the company, at their nominal value, did not greatly exceed the claims proved to exist, and, with the percentage allowed for collection, &c., were insufficient if fully available to pay the entire indebtedness. I think this evidence was not only competent, but that it proved a case requiring the receiver to proceed and make an assessment for the payment of the debts, and to assess the total amount of any note chargeable, to its entire amount for liabilities which justly attached during the existence of the policy accompanying such note. It does not, that I am able to see, distinctly appear that the losses for which the defendant's note was assessed, all accrued within the period during which his policy was running. But the dates given in the referee's report of the losses proved before him in the action above referred to, are sufficient to make a *prima facie* case on this point. They showed that the losses which accrued within the three years' lifetime of the policy, and those adjusted and allowed, or established by judgment within the period, were so large that the receiver, under the authority given him by the court, was justified in declaring that such debts, with the expenses of collection, required him to call in the whole amount of the defendant's premium note. The point is by no means a clear one, but I think the fair presumption is, from all the evidence given, that the receiver, as an officer of the court, was called upon and authorized, in the discharge of his duty, to make an assessment to the whole amount of the note.

It follows, therefore, from the principles settled in Sands *v.* Sanders, *supra,* that the judgment should be reversed, and a new trial ordered, with costs to abide event.

DENIO, Ch. J. [delivered the following opinion in the case of Sands v. St. John. After alluding to the facts.]—The principal questions now involved came before this court in the case of Sands (the present plaintiff) against Sanders, 26 N. Y. 239. One of these questions regards the assessment made by Mr. Eames. Notice of it was published pursuant to the by-laws, except that it was inserted in only two newspapers, the by-law requiring it to be published "in three newspapers printed in Oneida county, three weeks successively," the last publication to be not less than thirty days prior to the time fixed for payment. An act of 1854 (ch. 369, § 13) authorizes the directors of mutual insurance companies to adjust the claims for losses, and "to settle and determine the sums to be paid to the several members thereof as their respective portions of such losses, and to publish the same in such manner as they shall see fit, or as the by-laws shall have prescribed." The sense of this paragraph, I think, is, that, in the absence of by-laws, the publication is to be made according to the discretion of the directors, and that, where by-laws exist, their prescriptions should be followed. I concur in what was said on that subject by Judge EMOTT, in Sands v. Sanders. The point was not decided in that case, the judges being equally divided upon it.

Upon the questions arising upon the assessment made by plaintiff, I do not doubt that where the charter of one of these companies authorizes the division of the risks into classes, and where such a division is actually made, the notes of any particular class are applicable only to the losses upon policies in that class, and cannot be diverted to the payment of losses in another class, nor can losses in another class be paid out of the proceeds of notes taken in the particular class. It is the same thing, as regards the application of that portion of the assets, as though the policies in that class constituted the only business of the company.*

I am of opinion, moreover, that there was *prima facie* evidence in the present case, that the policy issued to the defendant was in a class called "special," or "special department," which was different from the classes denominated "farmers

---

* But see White v. Ross, reported in this series.

and merchants',", and was more hazardous, and was sometimes called the hazardous class. The word "special" has reference, I conceive, to the class of special hazards, as set down in the schedules annexed to the policies generally used by insurance companies. In the case of Sanders, the fact was found that the policy for which the defendant's note was given, was in the class called hazardous; and the opinion of the supreme court assumes that this note was in the same class. The present case did not reach the stage where a finding became necessary, but there was evidence tending very strongly to show that the present defendant's note was in the class mentioned. So far as it was material to the decision, the question should have been submitted to the jury.

Assuming, then, that there was no evidence suitable to be considered for assigning the defendant's note to that class, I think the remaining questions in the case are covered by the judgment in Sands v. Sanders; and I refer to the opinions of the judges in that case for the reasons on which I place my opinion for reversal. I concur in those opinions, except in so far as I have expressed a different conclusion.

The nonsuit should be set aside, and a new trial ordered.

All the judges present concurred in reversing the judgment in both cases.

Judgments reversed and new trials ordered, costs to abide event.

